**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIJEANNE LIEDERBACH,

           Plaintiff,

- v -

NYU LANGONE HOSPITALS, GAIL CHORNEY, and JOSE LABARCA III,

           Defendants.

Civil Action No.: 24-cv-742

**COMPLAINT**

*Jury Trial Demanded*

    Plaintiff Marijeanne Liederbach, PhD ("Liederbach"), by and through her undersigned attorney, brings this Complaint against Defendants NYU Langone Hospitals ("NYULH"), Gail Chorney, MD ("Chorney") and Jose LaBarca III ("LaBarca"), and alleges as follows:

**PRELIMINARY STATEMENT**

    1.    This is an action for disability discrimination and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

    2.    Plaintiff Marijeanne Liederbach, PT, AT, CSCS, PhD was the Director of the NYULH's Harkness Center for Dance Injuries. For 30 years at NYULH, Dr. Liederbach, a lauded clinician, prolific author of high impact scientific journal research, and internationally renowned educator and leader, established NYULH's Harkness Center for Dance Injuries as the world-wide premier center for treating and preventing injuries to professional ballerinas, modern dancers and Broadway performers as well as elite and everyday athletes. Dr. Liederbach had a stellar reputation not only at NYULH but internationally, which attracted dancers worldwide to NYULH. As the face of the NYULH Harkness Center for Dance Injuries, she lectured internationally and attracted millions of dollars to NYULH from donors.

1

3. Two days after Dr. Liederbach informed Defendants of her breast cancer diagnosis and her plan to file FMLA paperwork so that she could undergo necessary treatment, NYULH terminated her employment.

4. After being informed of Dr. Liederbach's serious medical condition and need for leave, Defendants falsely accused her of not working for several days during which she had worked remotely.

5. At the time Defendants accused her of "theft of services," Dr. Liederbach had accrued more than 130 days of paid time off to use in the event she was unable to work certain days.

6. Dr. Liederbach was a salaried and exempt employee who had nothing to gain from misreporting her work hours.

7. Defendants never gave Dr. Liederbach the opportunity to prove that she was working remotely on the days in question.

8. They instead abruptly terminated her employment and medical coverage as she was preparing to undergo surgery, radiation, and chemotherapy.

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

9. The Court has original jurisdiction over Dr. Liederbach's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

10. The Court has supplemental jurisdiction over Dr. Liederbach's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

11. The Court additionally has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is a diversity of citizenship among the parties and this action involves an amount in

2

controversy in excess of $75,000, excluding interests and costs. Dr. Liederbach resides in Pennsylvania. Defendant NYULH Hospitals is a New York not-for-profit corporation with operations in New York, New York and, upon information and belief, Defendants Chorney and LaBarca reside in New York, New York.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

13. Within 10 days of the commencement of this action, Dr. Liederbach will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PARTIES

14. Dr. Liederbach is a resident of the State of Pennsylvania and former Director at NYULH, and Research Associate Professor at NYU Grossman School of Medicine, Department of Orthopedic Surgery.

15. At all relevant times, Dr. Liederbach was an "employee" of Defendants under all relevant statutes.

16. Defendant NYULH is a not-for-profit corporation registered in New York and permitted to do business in New York.

17. NYULH employed more than 14 employees throughout Dr. Liederbach's employment.

18. NYULH and its Langone Orthopedic Hospital conducted business at 550 First Avenue and 301 East 17th Street, where it employed Dr. Liederbach.

19. Defendant Chorney was at all relevant times employed by NYULH in the role of

3

as Clinical Associate Professor in its Department of Orthopedic Surgery.

20. Defendant LaBarca was at all relevant times employed by NYULH in the role of Director of Human Resources for the NYULH Orthopedic Hospital.

21. At all relevant times, Defendants were Dr. Liederbach's "employer" under all relevant statutes.

22. Dr. Liederbach is a licensed athletic trainer and physical therapist with two Master of Science degrees from Virginia Commonwealth University and Mercy College, respectively, earning recognition for her GPA within the National Dean's List during that time. Dr. Liederbach received a PhD in Biomechanics and Ergonomics from New York University in 2008. Between the years of 1996 and 2001, Dr. Liederbach was Instructor of Kinesiology at Teachers College Columbia University.

**Dr. Liederbach is an Internationally Renowned Leader in her Field and Was an Esteemed Employee as Director of the NYULH Harkness Center for Dance Injuries When Defendants Fired Her**

23. Dr. Liederbach has dedicated her entire career of almost 30 years to building NYULH's Harkness Center for Dance Injuries from the ground up, amassing a robust and returning onsite client base as well as multiple reliable and revenue-generating offsite relationships. Among her multitude of responsibilities, Dr. Liederbach worked on the Center's budget and finance, strategic planning, clinical rehabilitation, education programs, research and associated ethics board reporting compliances, business contracts in cooperation with the Legal department, and coordination with the Development office on grant and proposal writing for philanthropic and research purposes.

24. Dr. Liederbach is the brainchild of, and grant writer for, the Harkness Center's free injury prevention programs and its wellness services, each of which are offered inhouse as

4

well as in the community, and each of which serves as a powerful driver of the Harkness Center's annual contribution margin. More than 20 years ago, Dr. Liederbach also solely created and curated the content of the Department's accredited continuing medical education offering (CME), "Principles of Dance Medicine: Clinical Management of the Dancer Patient," which remains a perpetual source of revenue as both an in-person, 4-day hands on CME/CEU course at the NYULH Medical School facility and also an online fee-based educational platform. Dr. Liederbach has raised multiple millions of dollars for the Center to serve the under-represented artists community and to create NYULH's first-ever public facing online portal for CME/CEU education offerings for which she won the annual, highly competitive and coveted NYULH TEAM Award. Because of these original ideas and efforts, which she accomplished in spite of significant institutional obstacles, Dr. Liederbach consistently brought in healthy annual contribution margins for NYULH, oftentimes exceeding 50%.

25. Dr. Liederbach has five decades of clinical and administrative leadership experience in the prevention and care of sports and dance injuries. Before joining NYULH, she headed the athletic training services for The Joffrey Ballet while serving as Supervisor of Sports Physical Therapy at the Nicholas Institute of Sports Medicine and Athletic Trauma at Lenox Hill Hospital, where she worked with the New York Jets, New York Rangers, New York Knickerbockers, and New York Cosmos. She has provided backstage therapy for hundreds of elite dancers and dance companies including The English National Ballet, Alvin Ailey American Dance Company, Dance Theatre of Harlem, Merce Cunningham Dance Company, Mark Morris Dance Group and dozens of Broadway shows including Wicked, Hamilton and Ben Vereen's various headliners.

26. Dr. Liederbach has authored more than 60 peer-reviewed papers and presentations

5

and has lectured internationally on topics pertaining to the epidemiology, prevention, and best practices for clinical management of sports and dance injuries. She was commissioned by the American Physical Therapy Association to author two monographs published in 2008 on the topics of epidemiology and the biopsychosocial concerns of Performing Arts Medicine Injuries. She is a member of the Editorial Review Board of the Journal of Dance Medicine and Science and has served on the National Advisory Committee for the American Physical Therapy Association's Performing Arts Practice Analysis; the DanceUSA Taskforce on Dancer Health; the Performing Arts Medical Association; and the Research Committee of the International Association for Dance Medicine and Science for whom she also Chairs the Standard Measures Consensus Initiative. Further, she is an Affiliate Member of the American Orthopedic Society for Sports Medicine. She has been awarded for her outstanding professional leadership by the Nicholas Institute of Sports Medicine Alumni Team, the National Dance Education Organization (NDEO) and the National Dance Association (NDA). Dr. Liederbach danced professionally for many years and produced critically acclaimed choreography shown in Europe and throughout the United States.

27. NYULH hired Dr. Liederbach as Program Coordinator for the Harkness Center for Dance Injuries at NYU Hospital for Joint Diseases in January of 1993. She was subsequently promoted to Director of Research and Education and then to Department Head with the dual titles of Director and Research Associate Professor, NYU Grossman School of Medicine, Department of Orthopedic Surgery. As an international leader of the Harkness Center for Dance Injuries, Dr. Liederbach produced for NYULH seminal global outreach and visibility for the treatment and prevention of the enormous number of annually occurring injuries. These injuries were causing vast emotional and financial cost to performing arts groups and their performers.

Dr. Liederbach was esteemed by NYULH's multi-million dollar donors, elite Broadway choreographers and producers, famous dancers, actors and athletes as well as journalists, healthcare professionals and scientists around the world for her unrivaled clinical insights and teaching skills, her reputation, knowledge, groundbreaking research and integrity.

28. Dr. Liederbach worked from NYULH's 614 Second Avenue (her administrative office) as well as from 380 Second Avenue (her biomechanics research laboratory) locations.

29. Dr. Liederbach succeeded in her role and received positive feedback based on her performance, including strong annual performance evaluations by the CEO of NYULH Orthopedic Hospital accompanied by a year-end bonus.

30. Dr. Liederbach received public praise for her passionate leadership and dedication to NYULH, including two Dean's Honors Day recognitions to celebrate her academic promotion and her extramural activity as keynote speaker at University of Southern California and selection of her Department as honoree for the NYULH Annual Gala at the Museum of Natural History.

31. Over decades in her profession, Dr. Liederbach has repeatedly been invited to lecture and provide workshops around the world.

32. During Dr. Liederbach's 30-year employment with NYULH she never received any criticism or negative feedback regarding her work performance.

**Dr. Liederbach Informs Defendants, NYULH, Chorney and LaBarca of Her Breast Cancer Diagnosis**

33. On or about April 23, 2022, Dr. Liederbach was diagnosed with breast cancer.

34. Between April 27 and May 3, 2022, Dr. Liederbach attended medical appointments at NYULH for her cancer diagnosis. She also began to pursue second opinions at University of Virginia (UVA) Medical Center in Charlottesville, Virginia, where her family lives, in order to think through the likely need for family support during the post-operative, daily

7

radiation and chemotherapy treatments, as she otherwise lived alone in a three-story walkup apartment in New York City and did not possess a car. During these consult appointments, she would commute back and forth between Charlottesville Albemarle Airport and NYC LaGuardia Airport via the several flights per day offered by Delta, American and additional airlines.

35. On or about May 4, 2022, Dr. Liederbach informed NYULH's Supervisor of Physical Therapy Faye Dilgen, Program Manager Alison Deleget, Education Coordinator Kristen Stevens, and Athletic Trainer Joshua Honrado of her breast cancer diagnosis and need for a medical leave in order to begin planning for Departmental workflow adjustments that would be needed during her medical leave.

36. On May 11, 2022, while Dr. Liederbach was on a paid time off day attending an appointment to undergo a MRI-guided biopsy of her right breast at the NYULH Perlmutter Cancer Center, Defendant Chorney telephoned her demanding that she immediately come to the NYULH Orthopedic Hospital's Human Resources office for an unplanned meeting with herself and Defendant LaBarca. Dr. Liederbach explained to Chorney that she was on PTO undergoing an MRI-guided biopsy of her right breast in connection with her cancer diagnosis and asked if the meeting could be scheduled for the next day when she would be back in the office. Chorney said the meeting could not wait and would not tell Dr. Liederbach the purpose for which the meeting was being called. Dr. Liederbach agreed to come to their office promptly following her discharge from her MRI-guided breast biopsy procedure at the NYULH Perlmutter Cancer Center.

37. When she arrived at the May 11, 2022 meeting, Dr. Liederbach informed LaBarca and Chorney that she had just left the NYULH Perlmutter Cancer Center and advised them that immediately following their meeting she would be submitting her NYULH FMLA paperwork

8

through the NYULH/Cigna online portal for her imminent surgery, radiation and chemotherapy scheduled to take place at NYULH Tisch Hospital and NYULH Perlmutter Cancer Center.

38. Dr. Liederbach further advised LaBarca and Chorney that she had already informed her top management subordinates, Faye Dilgen, Alison Deleget, Kristen Stevens and Joshua Honrado, approximately 10 days earlier of her breast cancer diagnosis so that they could begin planning together with her for workflow adjustments that would be needed during her FMLA leave, ensuring there were adequate redundancies within the Department for coverage of all its onsite and offsite service areas without interruption.

39. Following Dr. Liederbach's medical disclosures to Chorney and LaBarca, they proceeded to aggressively question her for approximately one hour about her work location documentation on several days. Although Dr. Liederbach provided thorough answers to their questions, LaBarca adjourned the meeting informing Dr. Liederbach that she was being placed "off duty" effective immediately, pending the outcome of an NYULH investigation concerning "theft of services" for days she had worked for NYULH remotely.

40. Dr. Liederbach had never been advised of any concern about her workstation location prior to the meeting, nor issued a performance improvement plan to address this purported concern.

41. At the close of this May 11, 2022 meeting, LaBarca and Chorney ordered Dr. Liederbach to leave the premises immediately and to cease all NYULH-related activity, thereby preventing her from submitting her FMLA paperwork as planned and discussed.

42. LaBarca and Chorney demanded that Dr. Liederbach not speak with anybody at NYULH about their accusations against her.

43. As a director-level employee, Dr. Liederbach — like all of her Department Head

9

colleagues at NYULH Orthopedic Hospital — was permitted to work from home at her discretion, though she regularly worked on-site.

44. Dr. Liederbach assured LaBarca and Chorney that she had always worked during any period in which she reported she would be working, whether remotely or on-site.

45. On the specific days the Defendants inquired about during the May 11, 2022 meeting, Dr. Liederbach had been working on a number of NYULH matters including attending and preparing for monthly meetings with the Department's research study teams; attending and preparing for twice monthly meetings with the Department's education team; attending and preparing for weekly meetings with the Department's program manager direct reports; attending and preparing for the FY23 budget planning meetings; preparing agenda for the Department's full staff quarterly meetings; planning meetings with the NYULH point person from the Office of Diversity, Equity and Inclusion; attending and planning for monthly Department Head meetings; maintaining Institutional Review Board materials; interviewing and onboarding a new employee; editing research manuscripts; editing the Department's social media posts; building PowerPoint decks for a continuing education course; and preparing an abstract for a professional conference deadline.

46. At the time of the May 11, 2022 meeting, Dr. Liederbach had accrued more than 130 PTO days, which she utilized whenever she was unable to work a certain day, just as she had done on the day of the May 11, 2022 meeting to undergo her breast biopsy procedure.

47. At the May 11, 2022 meeting, LaBarca acknowledged that he and his staff were still presently working remotely 50% of their time.

**Defendants Falsely Accuse Dr. Liederbach of "Fraudulent Behavior" and "Theft of Services" and Terminate Her Employment**

48. On May 13, 2022, two days after Dr. Liederbach informed LaBarca and Chorney

of her breast cancer diagnosis and of her need for FMLA leave, NYULH terminated her employment.

49. After the May 11, 2022 meeting and prior to this May 13, 2022 termination, LaBarca and Chorney had sent Dr. Liederbach an NYULH WebEx meeting invitation link to discuss the outcome of their "investigation."

50. Dr. Liederbach logged on to this NYULH WebEx meeting approximately five minutes early.

51. Neither LaBarca nor Chorney joined the NYULH WebEx meeting that they had scheduled to discuss the outcome of their investigation.

52. After Dr. Liederbach waited for 15 minutes alone on the NYULH WebEx meeting platform, she emailed LaBarca and Chorney to ask if the meeting was still being held given that neither of them had yet joined.

53. LaBarca replied by email, attaching a letter of termination signed by Chorney with no message in the body of the email itself.

54. After opening the attached letter, Dr. Liederbach's NYULH email and online portal accesses were disabled, sending Dr. Liederbach into a state of shock.

55. Just as Dr. Liederbach was attempting to cope with the news of her breast cancer diagnosis and rearrange her work and personal life to prepare for cancer treatment and surgery, her termination based upon a false accusation of "theft of services" traumatized her.

56. Dr. Liederbach was a salaried and exempt employee who had nothing to gain from misreporting her work hours.

57. Defendants knew Dr. Liederbach had discretion to work remotely.

58. By wrongfully terminating Dr. Liederbach's employment, Defendants cut off not

only her income as a single woman responsible for all her costs of living associated with working in New York City, but also her health insurance coverage a mere 12 days before her breast cancer surgery.

59. Dr. Liederbach was accordingly prevented by Defendants from applying for the FMLA leave she was eligible for and which she had discussed with Chorney and LaBarca at the beginning of their May 11, 2022 meeting as being necessary for her imminent surgery, radiation, and chemotherapy.

### FIRST CAUSE OF ACTION
### (Retaliation and Interference in Violation of the FMLA)
*Against All Defendants*

60. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

61. Pursuant to 29 U.S.C. § 2615(a)(2), the FMLA prohibits discrimination or retaliation by any employer against any individual based upon their exercise of any rights provided by the FMLA.

62. Defendants engaged in unlawful retaliation against Dr. Liederbach after she asserted her rights under the FMLA by terminating her employment in response to her request for FMLA leave and disclosure that she would be applying for FMLA leave.

63. Defendants' conduct was willful, intentional, made in disregard for the rights of Dr. Liederbach, and Defendants knew or should have known it was in violation of the FMLA, entitling Dr. Liederbach to an award of compensatory and punitive damages.

### SECOND CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

64. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs

as if fully set forth herein.

65. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Dr. Liederbach because she was a member of a protected class.

66. Dr. Liederbach is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

67. Dr. Liederbach was qualified to work as a Director and Research Associate Professor for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

68. As set forth in detail above and here, Defendants discriminated against Dr. Liederbach and subjected her to adverse employment actions.

69. As a direct and proximate result of the unlawful employment practices of Defendants, Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

70. Accordingly, Defendants discriminated against Dr. Liederbach because of her membership in a protected class, in violation of her statutory rights as guaranteed by the NYSHRL, entitling her to an award of compensatory and punitive damages.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

71. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

72. As set forth in detail above, Dr. Liederbach engaged in activity protected under the NYSHRL.

73. Defendants retaliated by subjecting Dr. Liederbach to discrimination and adverse

employment actions because of her protected activity in violation of Dr. Liederbach's statutory rights.

74. Defendant was aware that Dr. Liederbach opposed unlawful conduct and asserted her rights under the NYSHRL.

75. Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress, a known aggravating factor to the condition of cancer.

76. Accordingly, Defendants retaliated against Dr. Liederbach in violation of her statutory rights as guaranteed by the NYSHRL. Dr. Liederbach is entitled to an award of compensatory and punitive damages.

## FOURTH CAUSE OF ACTION
### (Failure to Accommodate in Violation of the NYSHRL)
*Against All Defendants*

77. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

78. Dr. Liederbach is a disabled individual under the NYSHRL and was perceived by Defendants as being disabled, and she is therefore a member of a protected class.

79. Defendants were aware and on notice of Dr. Liederbach's disability and its symptoms.

80. Dr. Liederbach requested reasonable accommodations for her disability.

81. Defendants failed to accommodate Dr. Liederbach's disability and failed to participate in any interactive discussion or process to determine if there was an accommodation that would accommodate Dr. Liederbach's disability.

82. Had Defendants provided Liederbach with a reasonable accommodation,

Liederbach could have performed the essential functions of her job.

83. Accordingly, Defendants discriminated against Dr. Liederbach by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the NYSHRL, entitling Liederbach to an award of compensatory and punitive damages.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

84. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

85. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Dr. Liederbach because she was a member of a protected class.

86. Dr. Liederbach is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

87. Dr. Liederbach was qualified to work as a Director and Research Associate Professor for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

88. As set forth in detail above and here, Defendants discriminated against Liederbach in the terms and conditions of her employment by treating Dr. Liederbach less well than her similarly situated, non-disabled coworkers.

89. Defendants subjected Dr. Liederbach to adverse employment actions because of her disability.

90. As a direct and proximate result of the unlawful employment practices of Defendants, Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

91.     The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Dr. Liederbach, entitling her to compensatory and punitive damages.

92.     Accordingly, Defendants discriminated against Dr. Liederbach because of her disability, in violation of her statutory rights as guaranteed by the NYCHRL.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

93.     Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

94.     As set forth in detail above, Dr. Liederbach engaged in activity protected under the NYCHRL.

95.     Defendants retaliated against Dr. Liederbach by treating her less well than similarly situated employees and subjecting her to discrimination and adverse employment actions because of her protected activity in violation of the NYCHRL.

96.     Defendants were aware that Dr. Liederbach opposed unlawful conduct and/or asserted her rights under the NYCHRL.

97.     Defendants, unlawfully and without cause, retaliated against Dr. Liederbach as a direct result of Dr. Liederbach asserting her rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

98.     As a direct and proximate result of Defendants' unlawful employment practices, Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

99. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Dr. Liederbach, entitling her to compensatory and punitive damages.

100. Accordingly, Defendants retaliated against Dr. Liederbach in violation of her statutory rights as guaranteed by the NYCHRL.

### SEVENTH CAUSE OF ACTION
### (Failure to Accommodate in Violation of the NYCHRL)
*Against All Defendants*

101. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

102. Dr. Liederbach is a disabled individual under the NYCHRL and was perceived by Defendant as being disabled, and she is therefore a member of a protected class.

103. Defendants were aware and on notice of Dr. Liederbach's disability and its symptoms.

104. Dr. Liederbach requested reasonable accommodations for her disability.

105. NYULH failed to accommodate Dr. Liederbach's disability and failed to participate in any interactive discussion or process to determine if there was an accommodation that would accommodate Dr. Liederbach's disability.

106. Had Defendants provided Dr, Liederbach with a reasonable accommodation, Dr. Liederbach could have performed the essential functions of her job.

107. As a direct and proximate result of Defendants' unlawful employment practices, Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

108. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless

and conducted in callous disregard of the rights of Dr. Liederbach, entitling her to compensatory and punitive damages.

109. Accordingly, Defendants discriminated against Dr. Liederbach by failing to accommodate her known disability under the NYCHRL.

## EIGHTH CAUSE OF ACTION
### (Aiding and Abetting in Violation the NYSHRL and NYCHRL)
*Against Chorney and LaBarca*

110. Dr. Liederbach repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

111. Defendants Chorney and LaBarca aided, abetted, incited, compelled, or coerced Defendants' unlawful conduct, including discrimination, failure to provide a reasonable accommodation, and retaliation, against Dr. Liederbach by their conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

112. Chorney and LaBarca were aware of their role as part of the unlawful activity that they assisted in, and knowingly and substantially assisted NYULH in its violations of the NYSHRL and NYCHRL.

113. As a direct and proximate result of their conduct, Dr. Liederbach has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

114. Chorney and LaBarca's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Dr. Liederbach, entitling her to compensatory and punitive damages.

## RELIEF

Plaintiff Marijeanne Liederbach, PhD demands judgment in her favor and against

Defendants NYU Langone Hospitals, Gail Chorney, MD and Jose LaBarca III as follows:

A. A declaratory judgment that the actions of Defendants complained of violate the FMLA, NYCHRL, and NYSHRL;

B. An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct;

C. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Dr. Liederbach for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Dr. Liederbach for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her extraordinary physical and emotional distress.

E. An award of compensatory and punitive damages, in an amount to be determined at trial;

F. Prejudgment and post judgment interest on all amounts due;

G. An award of Dr. Liederbach's reasonable attorneys' fees and costs to the fullest extent permitted by law;

H. Return of all belongings to Dr. Liederbach, including her paper and e-files, including her research work-in-progress; and

I. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Marijeanne Liederbach, PhD demands a trial by jury on all issues so triable of

right.

Dated: February 1, 2024
New York, New York

                                        **RISSMILLER PLLC**

By:   */s/ Alex Rissmiller*
       Alex Rissmiller
       5 Pennsylvania Plaza, 19th Floor
       New York, NY 10001
       T: (646) 664-1412
       arissmiller@rissmiller.com

       *Attorney for Plaintiff Marijeanne Liederbach*